# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DANIEL ROBERT <br> SSGT, U.S. ARMY <br><br> HOLLI MULVIHILL <br> SSGT, USMC <br><br> Plaintiffs, <br><br> v. <br><br> LLOYD AUSTIN <br> Secretary of Defense, <br> U.S. DEPARTMENT OF DEFENSE <br> Washington, D.C. 20301 <br><br> and <br><br> XAVIER BECERRA <br> Secretary of the U.S. Department of <br> Health and Human Services <br> U.S. DEPARTMENT OF HEALTH <br> AND HUMAN SERVICES <br><br> and <br><br> JANET WOODCOCK, Acting <br> Commissioner of the Food & Drug <br> Administration <br> U.S. FOOD AND <br> DRUG ADMINISTRATION <br><br> UNITED STATES OF AMERICA <br><br> Defendants. | Civil Action No. 1:21-cv-002228 |

## PLAINTIFF'S VERIFIED MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER

## RULE 7.1 CERTIFICATE

1. Pursuant to D.C.Colo.L.Civ.R. 7.1, Todd Callender, counsel for Plaintiffs, has attempted to contact the Defendants counsel and left voice messages detailing information about the call, including the reason and case style and/or number, though did not reach a natural person to speak with. Plaintiff is confident that Defendants will or do oppose the relief sought by this Motion.

## NOTICE OF FILING OF MOTION FOR TEMPORARY RESTRAINING ORDER

2. Counsel for Plaintiffs, Todd Callender, attempted to contact the Office of General Counsel for all of the Defendant Agencies, but was unsuccessful. Plaintiff's counsel Todd Callender informed all of the Defendants' GC offices, which the FDA and HHS share, of the filed Complaint in this matter and the intended filing of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Counsel for Plaintiffs is in possession of three Returns of Service of Process thereby indicating the Complaint, evidence and Summonses were delivered.

3. Defendants will be provided actual notice by additional Service of Process of Plaintiffs' Motion and of Plaintiffs' intent to seek a hearing on the Motion at the Court's earliest convenience. A proposed order is appended at the end of this Motion.

## Procedural History and Background

4. Plaintiffs SSG Dan Robert, U.S. Army, and SSgt Hollie Mulvihill, USMC, are both active-duty service members currently serving the United States Armed Forces. The Plaintiffs represent the class of at least 220,000 thousand currently-serving U.S. servicemen and women who can document that they have already been infected with COVID-19, recovered from it, and thereby acquired natural immunity from the virus. Plaintiffs filed suit with this court on August 17, 2021, to vindicate their rights, including their right to be free from unwanted physical intrusion, to

2

reserve their guaranteed, codified and fundamental rights of informed consent; and to be free from involuntary inoculation against a virus that poses statistically zero threat to them. Forcibly inoculating the Plaintiffs class will provide no benefit to them and will cause significant and irreparable physical harm and or death. Worst of all, existing laws and regulations unequivocally provide the exemption Plaintiffs seek, yet the Defendant DoD by and through its Secretary Austin, has issued a mandate ignoring the DoD's own regulations and creating an entirely new definition of "full immunity" that can only be achieved by this forced vaccination. In so doing, the Defendants are acting *ultra vires* in derogation of Plaintiffs' rights, in violation of existing laws, regulations, medical ethics, and the overwhelming weight of scientific evidence.

MOTION FOR TEMPORARY RESTRAINING ORDER

5.      Plaintiffs are staring at a mandate that began last Thursday. If Plaintiffs are not granted the relief sought, they will suffer immediate physical harm by being forced to take a vaccine for a virus to which they already have immunity. This will constitute an unconsented physical invasion of the worst kind, with a novel mRNA technology that has not even been tested on the entire class of Plaintiffs.[1] Plaintiffs also have a clear and unequivocal right to the exemption they are seeking under the DoD's own regulations.

> To obtain a temporary restraining order under Rule 65(b)(1)(a) of the Federal Rules of Civil Procedure, a plaintiff must show, via affidavit: (i) that he will suffer immediate and irreparable injury before the defendant can be heard in opposition; and (ii) the efforts he has made to give notice of the request to the opposing party, or to show why notice should be excused.

---

[1] The Phase III trial that was used as the basis for the FDA "approval" – a matter which Plaintiffs do not concede and will show on full-briefing was a fraudulent approval – specifically excluded from its cohort anyone who had already had Covid-19 as a contraindication. This means that the vaccine's effects upon the entire class of Plaintiffs is unknown and constitutes a new experiment, which requires by law Plaintiffs' informed consent. See Exhibit 2, Affidavit of Dr. Jane Ruby, ¶14(e).

3

Watts v. Donley, 15-cv-00320 (D. Colo. 2015).

6. As noted supra ¶1-3, Plaintiffs' counsel has attempted to contact the Defendants' counsel after the filing of this lawsuit, but the Defendant Austin announced an immediate mandate for vaccination this past Thursday and the DoD is proceeding with all speed to force this vaccine on over 222,000 service members who have already had and recovered from SARS-CoV-2 (i.e. Covid-19). Plaintiffs have no choice but to seek this emergency relief in order to protect their rights.

7. Plaintiffs are likely to prevail upon the merits for the relief sought, namely a permanent injunction against the Defendant DoD, as well as a declaratory judgment regarding the Defendant DoD's actions. Army Regulation 40-562 ("AR 40-562") is the all-service publication that governs the administration of "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases." The regulation provides documented survivors of an infection a presumptive exemption from vaccination due to the natural immunity acquired as a result of having survived the infection. "General examples of medical exemptions include the following… Evidence of immunity based on serologic tests, documented infection, or similar circumstances." AR 40-562, ¶2-6a.(1)(b). Defendant HHS' own Assistant Secretary, Dr. Admiral Bret Diroir, stated on August 24, 2024 in an interview aired on Fox News: "So natural immunity, it's very important. . . *There are still no data to suggest vaccine immunity is better than natural immunity*. I think both are highly protective."[2] (emphasis added)

8. Yet on the same day, Defendant SecDef Austin issued a memo mandating the entire Armed Forces be inoculated. In that memo the SecDef created a new term and concept, in complete

---

[2] See also sworn affidavit of Dr. Peter McCullough filed with the original Complaint on Monday, August 23, 2021

4

contravention to the plain language of DoD's own regulations, to longstanding immunology practice, to medical ethics, to the abovementioned remarks by the Asst. Secy of HHS, and to the overwhelming weight of scientific evidence regarding this specific virus. See Exhibit 3, SecDef Memo dtd Aug. 24, 2021 ("Those with previous COVID-19 infection are *not considered fully vaccinated*.")(emphasis added). The DoD regulation contains no such term, nor concept, and the Defendant SecDef's new definition effectively wipes away the DoD's own regulation. The SecDef is not a doctor, and this declaration has no basis in medical science at all, nor did this instant change to the regulation go through any notice and comment period, nor rulemaking process, nor any process at all. Indeed, the SecDef simply declared it without a scintilla of evidence to support it. This alone constitutes a glaring abuse of discretion under Administrative Procedures Act review and should entitle the Plaintiffs to a declaratory judgment against the Defendant Austin on the merits. See, e.g., *Doe v. Rumsfeld*, 297 F.Supp.2nd 119 (DDC, 2003). Important for this Court's consideration is that as Doe v. Rumsfeld notes in its detailed analysis, this is not a matter that will cause harm to the Defendants by allowing this TRO until the Court can receive a full-briefing on the matter because all this TRO does is continue what has been the *status quo ante* up until this past Thursday.

9. The Federal Food Drug & Cosmetic Act (FDCA), 21 U.S.C. §301 *et seq*., and its associated federal regulations, govern the process by which drug manufacturers apply for and are eventually granted a license for new drugs. The regulations are legion and cover a myriad of aspects of the testing, manufacture, handling, delivery, labeling, and even the marketing and advertising of approved drugs and biologics. Generally speaking, the standard for scientific evidence acceptable for demonstrating substantial effectiveness is defined by Congress as:

> adequate and well controlled investigations, including clinical investigations, conducted by experts qualified by scientific training

5

> and experience to evaluate the effectiveness of the drug involved, on the basis of which it could be fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling.

21 U.S.C. §355(i).

10. To demonstrate both safety and efficacy, the FDA "typically requires three phases of clinical trials" for vaccines.[3] Phase I trials include small numbers of healthy volunteers, perhaps a few dozen to a hundred.[4] Phase 2 studies usually involve a slightly larger cohort and looks for short-term reactions to the vaccine. Phase 3 studies are supposed to be the most robust, both in terms of numbers of participants and in the scientific rigor that the products are required to meet. All of these studies are planned in advance and submitted for approval to the FDA.

> In Phase 3 studies, hundreds or thousands of volunteers participate. *Vaccinated people are compared with people who have received a placebo* or another vaccine so researchers can learn more about the test vaccine's safety and effectiveness and identify common side effects.[5]

11. The Pfizer-BioNtech BNT162b Covid-19 vaccine (the "EUA Pfizer Vaccine") conducted Phase 1 and 2 trials. After their completion, Pfizer submitted a protocol for a Phase III, blinded, placebo-controlled trial lasting two years and involving 44,000 volunteers. The study's scheduled end date was in mid-2023, to allow adequate time to follow the vaccine recipients and determine if there were intermediate to long-term side-effects from the vaccine, particularly considering that the mRNA technology for a vaccine has (a) never been approved by the FDA in

---

[3] CDC website, last accessed on Aug. 26, 2021 - https://www.cdc.gov/vaccines/hcp/conversations/ensuring-safe-vaccines.html this is also an oversimplification as there will always be pre-clinical animal studies before vaccines are ever tested on human beings.
[4] Id.
[5] Id.

6

its history, and (b) never been used on large cohorts of people.

12. In addition, in order to prove potency and efficacy of the vaccine, both legal *requirements* for a vaccine's licensure, half of the volunteers received the vaccine and half received a placebo. The participants were blinded in order to ensure that the vaccine could produce better results than a placebo.

> Clinical trials are conducted according to plans that FDA reviews to ensure the highest scientific and ethical standards. The results of the clinical trials are a part of FDA's evaluation to assess the safety and effectiveness of each vaccine. In addition to evaluating the results of the clinical trials, FDA scientists and medical professionals carefully evaluate a wide range of information including results of studies on the vaccine's physical, chemical, and biological properties, as well as how it is manufactured, to ensure that it can be made consistently safe, pure, and potent.[6]

13. Inexplicably, in the middle of that Phase III trial, the manufacturer un-blinded the two cohorts, and members of the placebo group were given the opportunity to take the vaccine if they wanted to. The FDA allowed this to happen; and allowed the manufacturer to turn the study from a placebo-controlled, blinded trial into an open, observational study.[7]

14. The British Medical Journal reached out to the manufacturers and FDA for an explanation.

> The BMJ asked Moderna, Pfizer, and Janssen (Johnson and Johnson) what proportion of trial participants were now formally unblinded, and how many originally allocated to placebo have now received a vaccine. Pfizer declined to say, but Moderna announced that "as of April 13, all placebo participants have been offered the Moderna covid-19 vaccine and 98% of those have received the vaccine." In other words, the trial is unblinded, and the placebo group no longer exists…
> How the FDA will weigh the loss of blinding and placebo controlled follow-up is unclear, but just months ago the agency

---

[6] Id.
[7] In one cohort the researchers noted that 98% of the placebo class elected to take the IND vaccine. See, also, Affidavit of Dr. Ruby.

7

said these trial properties were vital.[8]

15. For clarity and fairness to the Defendants, the Defendant FDA's own prior statement regarding the necessity of a placebo group was as follows:

> Continuation of placebo controlled follow-up after EUA will be important and may actually be critical to ensure that additional safety and effectiveness data are accrued to support submission of a licensure application as soon as possible following an EUA. … Once a decision is made to unblind an ongoing placebo controlled trial, that decision cannot be walked back. And that controlled follow-up is lost forever.[9]

16. At its next advisory committee in December 2020, the FDA reiterated the importance of the placebo group: "Placebo controlled follow-up can be very important in showing that whatever happened in the vaccine group also happened in the placebo group. Because that's our **best way of knowing**."[10] (emphasis added).

17. The Defendant FDA granted EUAs for three different Covid-19 "vaccines," even though at least two of the different IND/EAU Covid 19 Vaccines share the same ingredients. See Exhibit 1, ¶14(g) of Dr. Grams' Affidavit.

18. These biologic products are not vaccines in the normal way in which that word is used, as they do not use the same manufacturing processes, nor do they function in the same way as *traditional* vaccines. Traditional vaccines typically use a live, but weakened virus, or a dead virus, or a small, less-harmful segment of a live virus or bacteria, in order to stimulate the body's natural immune response. See Exhibit 2, Affidavit of Dr. Jane Ruby.

19. The current Covid-19 "vaccines" all use novel mRNA or adenovirus technology to

---

[8] BMJ 2021; 373: n1244
[9] US Food and Drug Administration, 161st Vaccines and Related Biological Products Advisory Committee (VRBPAC) meeting. Oct 3, 2020. https://www.fda.gov/media/143982/download
[10] US Food and Drug Administration. 162nd Vaccines and Related Biological Products Advisory Committee (VRBPAC) meeting. 2020. https://www.fda.gov/media/144859/download

stimulate a genetic immune response. In fact, the messenger RNA reprograms the user's body to produce at least portions of the very same toxic spike proteins that constitute the pathogenic SARS-Cov-2 virus in an effort to arm the user's immune defenses against a known enemy.[11]  Whereas adenovirus programing, such as found in the Johnson & Johnson (Janssen) vaccine uses non-enveloped DNA viruses (a DNA vaccine) or fragments to infect a wide range of the user's cells to produce the same or similar spike proteins as the mRNA vaccines do.[12] In the case of all three IND/EUA Covid 19 Vaccines, the injectables cause a user's genome to produce abnormal S proteins, which are now known and demonstrated to cause mitochondrial damage and fragmentation.[13]

20.     In short, all three Covid 19 Vaccines cause the user's body to produce or over produce S-proteins which represent abnormal growth. On this basis alone, injury to the user's genome may well be prospectively barred by the Americans with Disabilities Act (ADA), whether such user was disabled at the time of the injection or not. See *Darby v. Childvine Inc. et al*, 964 F.3d. 440, (citing 29 CFR § 1630.2(j)(3)(iii)).

21.     The Vaccine Adverse Event Reporting System (VAERS) contains adverse event reports for all vaccines administered in the United States going back to July 1, 1990.[14] Before the introduction of Covid-19 EUA vaccines by the Defendant FDA in December 2020, the VAERS system had recorded a total for ALL prior vaccines of 5039 deaths and 12,053 permanent disabilities. For the week beginning August 13, 2021, the VAERS system showed 13,068 reports

---

[11] "Understanding Covid 19 mRNA Vaccines"; Mar. 4, 2021:
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html
[12] "Prospect of SARS-CoV-2 spike protein: Potential role in vaccine and therapeutic development"; Virus Res. 2020 Oct 15; 288: 198141
[13] "The Novel Coronavirus' Spike Protein Plays Additional Key Role in Illness.": Salk April 30, 2021
[14] VAERS Vaccine Adverse Event Reporting System data, available at https://vaers.hhs.gov/

9

of death[15] and 1,031,100 Serious Adverse Events resulting from the Covid-19 EUA vaccines *alone*.[16]

## CONCLUSION

The Plaintiffs are facing a very real physical threat from their own leadership to take a vaccine they are specifically exempted from taking by sound medical practice codified in the DoD's regulations. These regulations track federal law and the experience of years of vaccination that medically exempt people for a number of reasons, including prior adverse reaction to any vaccine, pregnancy, etc. AR 40-562 ¶2-6. The regulations also incorporate Constitutional considerations and allow for exemptions for religious reasons. (Id.) In light of the current situation, the Plaintiffs ask this Court to grant the requested relief so that both the Plaintiffs and Defendants can present a full briefing on the myriad of issues relating to these novel injectables and how they came to be rushed through the FDA process without having completed the requisite scientific studies or safety follow-up.

Dated: August 30, 2021

Respectfully submitted,

/s/
*Todd Callender, Esq.*
Colorado Bar #25981
600 17th St., Suite 2800 South
Denver, CO 80202
Telephone: (303)-228-7065 x7068

---

[15] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html

[16] It is worth noting that in 1976 President Gerald Ford rushed to roll out a nationwide vaccine for a novel swine flu that had caused an outbreak among soldiers at Ft. Dix, New Jersey. Emergency legislation was passed and 6 months later the government began a mandatory vaccine program that had celebratory endorsements, images of the President getting his vaccine, and some 45 million citizens eventually received the vaccine. Approximately 450 people got Guillain Barre Syndrome and - while exact numbers are difficult to come by - approximately 25-35 Americans died from the vaccine. The program was halted after public outcry. One wonders how many more bodies will be the threshold for stopping this program – 20,000? 50,000?

          Email: todd@dradvocates.com
          Attorney for the Plaintiffs

   /s/
Dale Saran
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 508-415-8411

   /s/
David Willson, Esq.
DRAdvocates
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: 303-228-7065 x6469

   /s/
D. Colton Boyles, Esq.
Boyles Law, PLLC
217 Cedar Street, Suite 312
Sandpoint, Idaho 83864
Telephone: (208) 304 – 6852
Email: Colton@CBoylesLaw.com

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| DANIEL ROBERT <br> SSGT, U.S. ARMY <br><br> HOLLI MULVIHILL <br> SSGT, USMC <br><br> Plaintiffs, <br><br> v. <br><br> LLOYD AUSTIN <br> Secretary of Defense, <br> U.S. DEPARTMENT OF DEFENSE <br> Washington, D.C. 20301 <br><br> and <br><br> XAVIER BECERRA <br> Secretary of the U.S. Department of <br> Health and Human Services <br> U.S. DEPARTMENT OF HEALTH <br> AND HUMAN SERVICES <br><br> and <br><br> JANET WOODCOCK, Acting <br> Commissioner of the Food & Drug <br> Administration <br> U.S. FOOD AND <br> DRUG ADMINISTRATION <br><br> UNITED STATES OF AMERICA <br><br> Defendants. | Civil Action No. 1:21-cv-02228 |

**TEMPORARY ORDER**

1. On August 30, 2021, the plaintiffs filed a motion for a temporary restraining order in the form of a stay *pendente lite*, preventing the Defendant Department of Defense from inoculating them and anyone similarly situated that comprises the class of service

members who can document that they have previously had Covid-19 and as a result have developed natural immunity that exempts them from inoculation under AR 40-562.

2. Having examined the original complaint, the enclosures thereto, this current motion and enclosures, it is hereby

**ORDERED, that the defendant Department of Defense is hereby temporarily restrained from inoculating the plaintiffs and class of plaintiffs, or taking any adverse administrative or punitive action against them, while this action is pending and until a final disposition of the matter is had before this Court or a superseding order is issued.**

Dated: August/September \_\_\_\_, 2021

_____
Judge of the District Court

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| DANIEL ROBERT | * | |
| SSGT, U.S. ARMY | * | |
| | * | |
| HOLLI MULVIHILL | * | |
| SSGT, USMC | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. Case 1:21-cv-002228 |
| LLOYD AUSTIN | * | |
| Secretary of Defense, | * | |
| U.S. DEPARTMENT OF DEFENSE | * | |
| Washington, D.C. 20301 | * | |
| | * | |
| and | * | |
| | * | |
| XAVIER BECERRA | * | |
| Secretary of the U.S. Department of | * | |
| Health and Human Services | * | |
| U.S. DEPARTMENT OF HEALTH | * | |
| AND HUMAN SERVICES | * | |
| | * | |
| and | * | |
| | * | |
| JANET WOODCOCK, Acting | * | |

| | |
|---|---|
| Commissioner of the Food & Drug Administration | * |
| U.S. FOOD AND DRUG ADMINISTRATION | * |
| | * |
| UNITED STATES OF AMERICA | * |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S SWORN AFFIDAVIT IN SUPPORT OF MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER

I, Dan Robert, of Fort Benning (city), in Georgia (State), MAKE OATH AND SAY:

1. I am an active duty Drill Sargent in the United States Army and named plaintiff in the above captioned matter filed as a Complaint on Monday August 23, 2021. I am swearing this affidavit in support of Motion for a Temporary Restraining Order in the pending case I have brought as Plaintiff. As such, I have knowledge of the matters contained in the Complaint and as alleged in this Motion for a Temporary Restraining Order. Where the source of my information and belief is from others, I state the source of that information and belief and believe it to be true.

2. This affidavit is being sworn on the understanding that it is being filed with the Colorado Federal District Court in the captioned matter on an *ex parte* basis, for a proceeding in which the

Defendants will not be participating. The purpose of this affidavit is to provide my consent and desire to move this Court for emergency protection detailed therein.

3. I swear this confidential affidavit for the purposes of the within motion, and for no other or improper purpose.

The undersigned, being duly sworn, deposes and says:

4. I, Dan Robert, declare under the penalty of perjury of the laws of the United States of America, and state upon personal knowledge that:

5. I am an adult of sound mind, 33 years old, and declare that the information herein is true, correct and complete and that I have voluntarily affirmed this affidavit based upon my own personal knowledge, education, and experience, and under the penalty of perjury of the laws of the United States of America.

SSGT DAN ROBERT

SUBSCRIBED AND SWORN TO BEFORE ME on the 30 day of August 2021, to certify which witness my hand and official seal.

Notary Public for the State of Georgia

My Commission Expires: 8-26-2023

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| DAN ROBERT | * | |
| SSGT, U.S. ARMY | * | |
| | * | |
| HOLLIE MULVIHILL | * | |
| SSGT, USMC | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. Case 1:21-cv-002228 |
| LLOYD AUSTIN | * | |
| Secretary of Defense, | * | |
| U.S. DEPARTMENT OF DEFENSE | * | |
| Washington, D.C. 20301 | * | |
| | * | |
| and | * | |
| | * | |
| XAVIER BECERRA | * | |
| Secretary of the U.S. Department of | * | |
| Health and Human Services | * | |
| U.S. DEPARTMENT OF HEALTH | * | |
| AND HUMAN SERVICES | * | |
| | * | |
| and | * | |
| | * | |
| JANET WOODCOCK, Acting | * | |

| | |
|---|---|
| Commissioner of the Food & Drug Administration | * |
| | * |
| U.S. FOOD AND DRUG ADMINISTRATION | * |
| | * |
| | * |
| UNITED STATES OF AMERICA | * |
| | * |
| Defendants. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PLAINTIFF'S SWORN AFFIDAVIT IN SUPPORT OF MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER

I, HOLLIE MULVIHILL, of Jacksonville, in North Carolina (State), MAKE OATH AND SAY:

1. I am an active duty Staff Sergeant in the United States Marine Corps and named plaintiff in the above captioned matter filed as a Complaint on Monday August 23, 2021. I am swearing this affidavit in support of Motion for a Temporary Restraining Order in the pending case I have brought as Plaintiff. As such, I have knowledge of the matters contained in the Complaint and as alleged in this Motion for a Temporary Restraining Order. Where the source of my information and belief is from others, I state the source of that information and belief and believe it to be true.

2. This affidavit is being sworn on the understanding that it is being filed with the Colorado Federal District Court in the captioned matter on an *ex parte* basis, for a proceeding in which the Defendants will not be participating. The purpose of this affidavit is to provide my consent and desire to move this Court for emergency protection detailed therein.

3. I swear this confidential affidavit for the purposes of the within motion, and for no other or improper purpose.

The undersigned, being duly sworn, deposes and says:

4. I, Hollie Mulvihill, declare under the penalty of perjury of the laws of the United States of America, and state upon personal knowledge that:

5. I am an adult of sound mind, 29 years old, and declare that the information herein is true, correct and complete and that I have voluntarily affirmed this affidavit based upon my own personal knowledge, education, and experience, and under the penalty of perjury of the laws of the United States of America.

*[signature]*

SSGT HOLLIE MULVIHILL

*[Seal: United States Marine Corps Notary Judge Advocate 10 U.S.C. 1044a, Indefinite]*

SUBSCRIBED AND SWORN TO BEFORE ME on the 30th day of August 2021, to certify which witness my hand and official seal.

Notary Public for the State of __North Carolina__

My Commission Expires: __Indefinite - Authority 10 U.S.C. 1044a__

*[signature]*

Kevin L. Hoffman
Major, U.S. Marine Corps
Staff Judge Advocate
MCAS New River

AUTHORIZED TO ACT AS A NOTARY PUBLIC UNDER THE PROVISION OF SECTION 1044A OF TITLE 10 OF THE UNITED STATES CODE. NO SEAL REQUIRED BY LAW