**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 21-cv-02228-RM

DAN ROBERT, SSgt, U.S. Army,
HOLLIE MULVIHILL, SSgt, USMC, and other similarly situated individuals,

      Plaintiffs,

v.

LLOYD AUSTIN, in his official capacity as Secretary of Defense, U.S. Department of Defense,
XAVIER BACERRA, in his official capacity as Secretary of the U.S. Department of Health and Human Services, and
JANET WOODCOCK, in her official capacity as Acting Commissioner of the U.S. Food & Drug Administration,

      Defendants.

---

## ORDER

---

Before the Court is Plaintiffs' Verified Motion for an Emergency Temporary Restraining Order (ECF No. 7). The Court denies the Motion for the reasons below.

**I.     LEGAL STANDARDS**

To obtain a temporary restraining order ("TRO") or injunctive relief in any other form, a plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). The final two requirements merge when the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435

(2009).  A TRO is an extraordinary remedy, and therefore the plaintiff must demonstrate a right to relief that is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  The fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held.  *Id.*  A TRO may issue without notice to the opposing party, but its duration is limited to fourteen days.  *See* Fed. R. Civ. P. 65(b)(1)-(2).

II.     **BACKGROUND**

Plaintiffs, two members of two branches of the military on active duty in North Carolina when the Verified Complaint was filed, allege that they represent a class of more than 200,000 U.S. servicemembers "who can document that they have already been infected with COVID-19, recovered from it, and thereby acquired natural immunity from the virus." (ECF No. 7 at 2.) They seek a declaratory judgment that the Department of Defense "cannot force them to take a COVID-19 vaccination under existing military regulations, federal regulations, federal law, and the U.S. Constitution." (ECF No. 1 at 1).  They bring this lawsuit on behalf of themselves and a class of similarly situated members of the military, which "consists of (at least) active duty and reserve component members of the United States Armed Forces and National Guard members who have already caught and recovered from COVID-19, documented and reported it to superiors and have been or will be ordered to take any COVID-19 vaccine." (*Id.* at 3, ¶ 7.)

Apparently prompted by a public memo from Defendant Austin, stating that he would be seeking authorization from the President to mandate vaccines for servicemembers, Plaintiffs filed their lawsuit on August 17, 2021.  (*See id.* at 2.)  In addition to the class action allegations, the Verified Complaint asserts claims for (1) violation of the Administrative Procedure Act,

2

(2) violation of 10 U.S.C. § 1107, (3) violation of 10 U.S.C. § 1107a, and (4) violation of 50 U.S.C. § 1520.

In their Motion, filed on August 30, 2021, Plaintiffs assert they "are staring at a mandate that began last Thursday" and that "they will suffer immediate physical harm by being forced to take a vaccine for a virus to which they already have immunity." (ECF No. 7 at 3.)

**III.   ANALYSIS**

Assuming for present purposes that Plaintiffs have standing and that at least one of their claims is justiciable, the Court finds they have failed to establish a clear and unequivocal right to a TRO as the matter now stands. Although the Motion touches on the TRO requirements, it does not explicitly address each of them. The Court does so now.

**A.   Substantial Likelihood of Success on the Merits**

In arguing that they are likely to prevail on obtaining a permanent injunction and a declaratory judgment, Plaintiffs rely on Army Regulation 40-562, ¶ 2-6a.(1)(b), which provides for medical exemption from immunization based on "[e]vidence of immunity based on . . . documented infection." But the limited factual allegations presented in the Verified Complaint preclude the Court from finding that Plaintiffs can establish that whatever "natural immunity" they have acquired through contracting and surviving COVID-19 constitutes adequate "evidence of immunity" for purposes of that regulation or parallel ones governing different branches of the military.

In their Motion, Plaintiffs cite a snippet from an interview with an official from the Department of Human Health and Services, who is on record stating that there is no evidence vaccine immunity is better than natural immunity and that he believes both are highly protective.

3

(ECF No. 7 at 4, ¶ 7.) And there is an affidavit by Dr. Peter McCullough, stating his opinion that "people who have the naturally created antibodies resulting from contracting and recovering from the Virus" should not be vaccinated because "it will do more harm than good." (ECF No. 1-1 at 6.) Plaintiffs also cite a handful of studies questioning whether previously infected individuals need to be vaccinated.

But Plaintiffs ignore all contrary opinion evidence, including obviously relevant guidance from the Centers for Disease Control and Prevention ("CDC") recommending vaccination regardless of whether a person has already had COVID-19 because research has not yet shown people are protected once they recover from the virus. *See Frequently Asked Questions about COVID-19 Vaccination*, CDC Website, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited Sept. 1, 2021). The Court is not compelled to view Plaintiffs' evidence in a vacuum or an echo chamber. As a result, the evidence cited by Plaintiffs coupled with their unsubstantiated insistence on their own natural immunity is insufficient to establish a clear and unequivocal right to a TRO under the circumstances of this case.

Moreover, to the extent that Plaintiffs contend they have been or will be subjected to unfair discipline for refusing a vaccine, the allegations in the Verified Complaint fall woefully short of providing this Court with enough information to determine whether any actual discipline has occurred or is likely to occur or to assess the appropriateness of measures such as segregating vaccinated and unvaccinated servicemembers at military dining facilities. (*See* ECF No. 1 at 11, ¶ 34.) For current purposes, the Court concludes merely that based on the current record, Plaintiffs have not established that they are substantially likely to prevail on the merits in this matter.

### B.  Irreparable Harm

Plaintiffs also fail to establish that they will suffer irreparable harm if required to take a vaccine.  As discussed above, Plaintiffs' contention that they may be subject to discipline for refusing to take a vaccine appears to be based on nothing more than speculation at this point.  Their contention that they will be uniquely harmed from vaccines that, according to the CDC, more than 200 million people had received by the time Plaintiffs' Motion was filed, is specious.  Moreover, as is now common knowledge, the Food and Drug Administration has now fully approved a COVID-19 vaccine, likely rendering moot Plaintiffs' underdeveloped arguments concerning the emergency use authorization for the vaccines currently available.  Plaintiffs have not shown that they are likely to establish that any COVID-19 vaccine is an "investigational new drug" or "unapproved for its intended use," so comparisons between their circumstances and servicemembers required to participate in the Anthrax Vaccine Immunization Program are inapt.  *Cf. Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 135 (D.D.C. 2003) (granting preliminary injunction where servicemembers and others were required to submit to an inoculation of an investigational drug under 10 U.S.C. § 1107).  Accordingly, Plaintiffs have not established that they will be irreparably harmed if a TRO is not issued.

### C.  Balance of Harms/Public Interest

Although Plaintiffs do not address this requirement directly, they argue that granting a TRO will not cause harm to Defendants because it would merely preserve "the *status quo ante* up until this past Thursday."  (ECF No. 7 at 5, ¶ 8.)  As alluded to elsewhere in this Order, Plaintiffs have been less than clear about what they allege has happened and what they allege might happen.  Nonetheless, in the midst of global pandemic in which national cases continue to

5

mount, the Court finds the public interest is advanced by applying scientific principles to get new cases under control.  In addition, the public interest in the nation's military readiness may well be served by allowing military officials who are familiar with the unique challenges posed by the COVID-19 pandemic in a military setting to manage those challenges without this Court's intervention.  *See Doe*, 297 F. Supp. 2d at 126 ("Courts have traditionally been hesitant to intervene in the conduct of military affairs.").  It suffices for current purposes to conclude that Plaintiffs have not carried their burden of establishing that allowing members of the military who have had COVID-19 to abstain from taking a vaccine if they wish to do so is in the public interest.

**IV.     CONCLUSION**

Accordingly, the Court finds the requirements for a TRO are not satisfied and DENIES Plaintiffs' Motion (ECF No. 7).

DATED this 1st day of September, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge