UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **DANIEL ROBERT** <br> SSGT, U.S. ARMY <br><br> **HOLLIE MULVIHILL** <br> SSGT, USMC <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD AUSTIN** <br> Secretary of Defense, <br> U.S. DEPARTMENT OF DEFENSE <br> Washington, D.C. 20301 <br><br> and <br><br> **XAVIER BECERRA** <br> Secretary of the U.S. Department of <br> Health and Human Services <br> U.S. DEPARTMENT OF HEALTH <br> AND HUMAN SERVICES <br><br> and <br><br> **JANET WOODCOCK**, Acting <br> Commissioner of the Food & Drug <br> Administration <br> U.S. FOOD AND <br> DRUG ADMINISTRATION <br><br> UNITED STATES OF AMERICA <br><br> **Defendants**. | **Civil Action No. 1:21-cv-002228** |

## MOTION FOR PRELIMINARY INJUNCTION

Now come the Plaintiffs, by and through their counsel, and hereby move this court for a preliminary injunction with respect to all Defendants. In support of their motion, Plaintiffs aver and state as follows:

1

# INTRODUCTION

1. Plaintiffs filed their complaint in this matter on August 12, 2021, seeking, *inter alia*, declaratory and injunctive relief against Defendants. Plaintiffs filed their Amended Complaint on 23 September 2021, against the same Defendants and seeking the same relief.

2. The facts and allegations stated in Plaintiffs' Amended Complaint are hereby incorporated into and made a part of this motion for preliminary injunction, as if fully set forth herein. Amended Complaint, Case No. 1:21-cv-002228, ECF No. ___.[1]

3. With the collaboration of the other Defendants, Defendant Department of Defense ("DoD") through the Secretary of Defense ("SECDEF") is currently engaged in an illegal vaccination program involving all active duty, National Guard, and reserve members of the armed forces.

4. In violation of 10 U.S.C. §1107 and 10 U.S.C. §1107a, Defendant DoD is knowingly forcing service members to submit to inoculation with an Emergency Use Authorization (EUA) vaccine against COVID-19.

5. In response to this litigation, as well as guidance provided to service members concerning the unlicensed status of the Pfizer-BioNTech vaccine, Defendant DoD has accelerated its inoculation program in an effort to prevent service members from asserting their rights under these statutes.

6. Without a preliminary injunction, Defendant DoD, aided and abetted by the other Defendants, will continue to violate the federal rights of service members, federal contractors, and others within its scope of control.

---

[1] Each citation to the Court's electronic record in this Motion refers to the electronic record for this case, unless otherwise specified.

7. Plaintiffs, who are service members facing immediate orders to submit to involuntary inoculation with unlicensed vaccines including Pfizer BNT162b2 ("BNT") are properly before this court and have submitted evidence demonstrating they are likely to prevail in this case on the merits of their claims.

8. Because Plaintiffs are subject to the command authority of their military superiors and these superiors are knowingly disregarding Plaintiffs' health risks and statutory rights in ordering their vaccination with unlicensed vaccines, there is no adequate remedy at law to protect Plaintiffs' rights and interests.

9. Injunctive relief is necessary to prevent irreparable harm to Plaintiffs and those similarly situated to them during the pendency of this action.

10. This court has jurisdiction to grant a preliminary relief sought in this motion, pursuant to Fed.R.Civ.P. 65.

11. Pursuant to D.C.Colo.LCivR 7.1, Plaintiffs' counsel has attempted to confer with counsel for Defendants; however, counsel for Defendants has refused to engage in any discussion related to the instant motion.

## **ANALYSIS**

12. The Tenth Circuit recognizes a four-factor test when determining whether a preliminary injunction is appropriate. A moving party must establish: (1) a substantial likelihood the moving party will prevail on the merits; (2) that the moving party will suffer irreparable injury without such an injunction; (3) that the balance of interests weighs in favor of the moving party; and (4) that the injunction would not be adverse to public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

13. If a moving party establishes that factors 2, 3, and 4 weigh in favor of the moving

party, "the test is modified, and [the moving party] may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004)(citing *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

### A. Plaintiffs Are Properly Before This Court.

14. Although civilian courts have traditionally been reluctant to intervene in the conduct of military affairs, *see, e.g., Chappell v. Wallace*, 462 U.S. 296, 300 (1983), there exists persuasive federal district court authority supporting precisely the type of claims present here. In *Doe v. Rumsfeld,* 297 F. Supp. 2d 119 (D.D.C. 2003), the District Court for the District of Columbia analyzed a request for injunctive relief by active-duty service members and federal contractors opposed to being forced to take an unlicensed vaccine inoculating them against aerosolized anthrax.

15. In its opinion granting the injunction, the court first analyzed the basic issue of whether an Article III court could properly deal with a request to enjoin military orders. Noting that the D.C. Circuit had not adopted a blanket rule prohibiting service members from seeking injunctive relief against the military and civilian courts in all cases, the court examined three factors to determine the initial question of justiciability. *Doe*, 297 F.Supp. 2d, at 126.

16. The three factors examined by the court are: whether a court martial was pending against any of the plaintiffs (*see, Schlesinger v. Councilman*, 420 U.S. 738 (1975)); the degree to which a ruling by the court would interfere with supervisory-subordinate relationships on the battlefield and/or personnel decisions (*see, Chappell*, 462 U.S. 296, 300); and the extent to which court action would affect or disrupt the goals of discipline, obedience and uniformity (*see,*

*Goldman v. Weinberger*, 475 U.S. 503 (1986)). *Id*.

17. None of the Plaintiffs in this case face pending court-martial or are involved in current military justice or administrative personnel actions. "Thus, there are no concerns that this lawsuit [is] an attempt to interfere with pending court martial proceedings or that a judgment in this case will interfere with a pending court martial against one of the plaintiffs." *Doe*, 297 F.Supp.2d, at 128.

18. As in *Doe*, this case alleges that both the DoD and FDA acted arbitrarily and capriciously by failing to adhere to statutes and regulations governing the exact same activity: an attempt to forcibly inoculate volunteer members of the Armed Forces with a biologic product that is either "unapproved for its applied use" (under 10 U.S.C §1107) or under an Emergency Use Authorization (under 10 U.S.C. §1107a).

19. Plaintiffs make a claim against the Secretary of Defense for a decision made at headquarters, not about a tactical decision made by military supervisors in the field. A judgment by this court will not affect command relationships on a battlefield.

20. Likewise, concerns about military uniformity, such as those present in *Goldman*, do not exist when the issue is vaccination status, something not perceivable by observers. *Doe*, 297 F. Supp.2d, at 128.

21. Accordingly, this case presents a justiciable issue for this court.

22. *Doe* also informs this case with respect to the Administrative Procedure Act's ("APA") limitation on the U.S. government's waiver of sovereign immunity. Specifically, the APA does not apply to "claims for which an adequate remedy is available elsewhere." *Id.*, *citing Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 607 (D.C.Cir. 1992). In *Doe*, The Department of Defense Defendant argued that the proper forum for plaintiffs to raise their

vaccine claims was the military justice system after having refused orders to take the vaccine. The *Doe* court rejected the argument, noting that other courts had determined that a service member facing orders she believed to be illegal had the option of either obeying the orders and then seeking judicial review of the military's policies or disobeying the orders and challenging their validity in subsequent military disciplinary proceedings.

23. None of the Plaintiffs are facing disciplinary proceedings at this point, although they have already been ordered to take the first of the vaccine shots within days. Given that there are no military court-martial proceedings under way, this Court may properly hear and act on their request for injunction. *Doe*, 297 F. Supp.2d, at 129.

24. Finally, the *Doe* court recognized that military service members facing an order to take an unlicensed vaccine allege a definitive injury subject to remediation by the court. "[W]hen challenging an investigational drug under 10 U.S.C. §1107, an inoculation without informed consent or a presidential waiver is the injury.… all plaintiffs have established they will imminently suffer a harm that is actual, concrete, and inflicted at the hands of the Defendants unless Defendants are required to conform to 10 U.S.C. 1107." *Doe*, 297 F.Supp.2d, at 131.

25. Plaintiffs' allegations in the Amended Complaint establish that they are properly before this court, and that the court has the authority and capacity to hear the case and enjoin Defendants' illegal conduct.

**B. The Undisputed Fact That The Pfizer-BioNTech Vaccine (BNT) Is Not Licensed Demonstrates Plaintiffs Are Likely To Succeed On The Merits Of Their Claim.**

26. Defendant FDA lists on their website a Pfizer document titled "VACCINE INFORMATION FACT SHEET," updated on 22 Sep 2021, which states in pertinent part:

> "**This EUA for the Pfizer-BioNTech COVID-19 Vaccine and COMIRNATY** will end when the Secretary of HHS determines that the circumstances justifying the EUA no

longer exist or when there is a change in the approval status of the product such that an EUA is no longer needed."[2]

27.     The merits argument of Plaintiffs case can be summarized succinctly: Federal law prohibits anyone, including a member of the Armed Services, from being forced, coerced, or in any way pressured to be vaccinated with an unlicensed vaccine (IND or EUA, or both) without their informed consent and Defendants are ignoring that prohibition, as well as their explicit statutory responsibilities to ensure that the American public, and Plaintiffs as a class, have the absolute right to refuse being administered an unapproved product.

28.     Defendant FDA has an *affirmative legal obligation* under the EUA statute to inform people about their right to refuse an unproven, unlicensed, EUA product. See 21 U.S.C. § 360bbb-3(e)(1)(A) "the Secretary ... shall ... establish ... [a]ppropriate conditions <u>designed to ensure that individuals to whom the product is administered are informed</u> ... of the **option to accept or refuse administration of the product**..." (emphasis added). This requirement is not limited in any way and on its terms applies to *anyone* being offered an EUA product – immigrants, prisoners, healthcare workers, members of the military, federal employees, etc. – this is the codification of the Nuremberg Code's fundamental human right to be free of unwanted medical interventions.

29.     Additionally, because of Defendant DoD's history of disregarding regulations regarding the administration of unapproved products to members of the military, and because of the possibility that military members might face chemical or biological weapons on the battlefield, there are two separate statutes that specifically require that (a) the members be informed of their right to refuse and investigational or experimental product, **and** (b) that the only government official who can waive that right is the President of the United States in

---

[2] https://www.fda.gov/media/144414/download, pp. 7-8.

writing. See 10 U.S.C. §1107, which covers INDs and even licensed products that are "unapproved for their applied use"; see also 10 U.S.C. §1107a, which covers EUA products.

> [A]s a general rule, persons must be made aware of their right to refuse the product (or to refuse it for their children or others without the capacity to consent) and of the potential consequences, if any, of this choice. An exception to this rule is that the president, as commander in chief, can waive military personnel's right to refuse this product. If the right is not specifically waived by the president for a particular product given under EUA, military personnel have the same right to refuse as civilians.[3]

30. It is undisputed that Defendant SECDEF has ordered all active duty, National Guard and reserve service members to be inoculated against COVID-19. Amended Complaint, ¶23. Defendant SECDEF's memorandum directed that service members would only be ordered to take a vaccine that had received "full licensure from the Food and Drug Administration." Amended Complaint, ¶25.

31. Not only are Defendants ignoring federal law, they appear to be engaged in a concerted effort to mislead the American public and Plaintiffs about their right to refuse an EUA or IND vaccine. For example, the FDA's documents regarding two separate, "legally distinct" vaccines, Pfizer BNT and COMIRNATY, are included together. On the same day that the FDA sent a letter purporting to license COMIRNATY, the letter attempted to link the two vaccines, one licensed (COMIRNATY) and the other (Pfizer BNT) extended in an EUA status.

32. Additionally, the Pfizer BioNTech (BNT) FACT SHEET nowhere mentions that people have the right to refuse to take it, even while the document is explicit that the Pfizer BNT vaccine is an EUA product. This is a flagrant violation of the EUA law's requirement that "the

---

[3] Nightingale SL, Prasher JM, Simonson S. *Emergency Use Authorization (EUA) to Enable Use of Needed Products in Civilian and Military Emergencies*, United States. Emerging Infectious Diseases. 2007;13(7):1046. doi:10.3201/eid1307.061188 available at https://wwwnc.cdc.gov/eid/article/13/7/06-1188_article

Secretary… establish... [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed ... of the option to accept or refuse administration of the product[.]" Indeed, it appears the Secretary is trying to do the exact opposite and obscure this fact and hide from people that they cannot be forced to take an EUA product.

33. The Pfizer BNT FACT SHEET also attempts to confuse recipients by stating that the two different vaccines "have the same formulation and can be used interchangeably to provide the COVID-19 vaccination series." This may be true in a technical sense, but it is not in a legal sense. The Pfizer BNT vaccine is *not yet licensed*. The Pfizer BNT vaccine cannot simultaneously be an EUA product (and therefore provide a near-complete shield from liability for Pfizer), and somehow also don the "FDA approved" cloak of COMIRNATY. The FDA is attempting to indulge Pfizer to have it "both ways" by offering the protection from liability that comes with being an EUA product, but simultaneously being "interchangeable" with an approved vaccine for purposes of mandating that people accept the BNT product.

34. This is not a hypothetical problem. This exact subterfuge is being used by military authorities to (illegally) justify coercing military members to take a clearly designated EUA product, the Pfizer BNT vaccine, by claiming that it is "interchangeable" with the licensed one. By flagrantly violating federal law, the FDA has failed to follow reasoned decision-making. Pfizer cannot unlawfully reap the benefits of licensure and EUA status simultaneously, even if the FDA says it can. This clearly violates the entire FDA regulatory regime, including the EUA statutes.

35. The documents the FDA made public regarding these decisions contain tortured, barely comprehensible language that fails to explain the "legally distinct" differences between the Pfizer vaccines with differing labels and designations. Vaccines may not hold "dual status"

like citizenship, with one foot in the EUA camp and one in the licensed camp.

36. Notwithstanding federal law, its own Department of Defense instructions, and individual service regulations, Defendant DoD has instructed the armed services to forcibly inoculate service members with the unlicensed, Emergency Use Authorized Pfizer-BioNTech vaccine. Amended Complaint, ¶¶26 and 27 (and Exhibits).

37. This is a patently illegal order because it explicitly violates the provisions of 10 U.S.C. §1107a by attempting to skirt the President's non-delegable duty to the total force as Commander-in-Chief.

> In the case of the administration of a product authorized for emergency use under section 564 of the Federal Food, Drug, and Cosmetic Act to members of the armed forces, the condition described in section 564(e)(1)(A)(ii)(III) of such Act and required under paragraph (1)(A) or (2)(A) of such section 564(e), <u>designed to ensure that individuals are informed of an option to accept or refuse administration of a product</u>, *may be waived only by the President only if the President determines*, <u>in writing</u>, that complying with such requirement is not in the interests of national security.

10 U.S.C. §1107a-(a)(1).

38. In addition to forcing service members to submit to inoculation with an unlicensed vaccine, Defendant DoD has ordered vaccination of servicemembers who contracted and recovered from COVID-19, in violation of its own regulations and sound medical practice. Amended Complaint, ¶24.

39. Defendant SECDEF's memorandum of 24 August 2021 specifically instructs the Armed Services to ignore any claims of the exemption from being vaccinated by service members who have immunity from previous COVID-19 infection. <u>Id.</u>

40. In establishing their mandatory vaccination programs, the Armed Services have followed Defendant Austin's instructions, ignoring the COVID-19 infection status of

servicemembers, and required all service members to receive the vaccination. Amended Complaint, ¶26.

41. Army regulation 40-562, "Immunization and Chemoprophylaxis For The Prevention Of Infectious Diseases" presumptively exempts from vaccination service members whom the military knows have a previously documented infection with the disease for which the vaccination is being ordered. See AR 40-562, ¶2-6(a)(1)(b); Amended Complaint, paragraph__.

42. Specifically, the regulation states: "2-6. Exemptions

> There are two types of exemptions from immunization-medical and administrative. Granting medical exemptions is a medical function. Granting administrative exemptions is a nonmedical function. a. Medical exemptions…Health Care providers will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration… (1) General examples of medical exemptions include the following… (b) Evidence of immunity based on serologic tests, documented infection, or similar circumstances." *Id*.

43. Instead of allowing for a proper medical evaluation of individuals with previous COVID-19 infection for purposes of determining whether the individual is exempt, Defendants have ordered their medical staffs to ignore the requirements of this regulation, effectively superseding the medical decision-making function, and violating the requirements of their own regulation.

44. Based on Defendants' own admissions, Plaintiffs show a clear likelihood of success on the merits of their claims for violations of federal law and failure by Defendants to follow their own regulations.

**C. Plaintiffs Will Suffer Irreparable Injury if the Injunction Is Denied**

45. "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v.*

*Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Accordingly, a "moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id*. (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (quoting *Dominion*, 269 F.3d at 1156). In addition, the party moving for injunctive relief must show that the harm is certain as opposed to theoretical, great, and "of such imminence that there is clear and present need for equitable relief." *Schrier v. Univ. of Colo.*, 427 F.3d at 1267; *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003).

46. In the absence of an injunction, Plaintiffs are facing inoculation with an unlicensed COVID-19 vaccine authorized for use under the terms of an emergency use authorization from the FDA. It would be hard to imagine a harm more irreparable than a non-consensual injection of an unlicensed substance into one's person. *See*, *Doe*, 297 F.Supp. 2d at 135.

47. Pfizer and BioNTech's own fact sheet lists the following side effects that have been reported for the Pfizer-BioNTech COVID-19 vaccine: myocarditis (inflammation, of the heart muscle), pericarditis (inflammation of the lining outside the heart), and swollen lymph nodes. See Amended Complaint, exhibit__.

48. In addition, the CDC continues to investigate reports of death among more than 13,000 individuals alone and not accounting for any of the 600,000+ Serious Adverse Events as reported at the Vaccine Adverse Event Reporting ("VAERS") System.

49. There is no data in the FDA licensing documents with respect to inoculation of

individuals previously infected with COVID-19 because those people were explicitly excluded from the clinical trial that is currently still underway and will not be finished until 2023.

50. In short, there is no monetary relief available for Plaintiffs if they are forced to submit to inoculation with an unlicensed substance. By its very essence, their claim establishes irreparable harm to themselves and those similarly situated to them.

**D. The Balance of Interests Weighs In Favor Of Enjoining Defendants' Conduct**

51. Plaintiffs and those similarly situated to them have or will suffer violations of their federally protected rights as well as irreparable injuries from Defendants' illegal conduct.

52. Plaintiffs face the prospect of having an unlicensed vaccine administered to them without their informed consent. Once they are given the shot, there is literally no remedy that they can pursue to reverse that action. Their interest in preventing Defendants from continuing to break the law could not be more manifest.

53. Defendants have not and cannot demonstrate a significant or legitimate interest in immediately proceeding with their illegal vaccination program.

54. There is no pressing military exigency requiring mandatory vaccination with a vaccine authorized only under emergency use circumstances.

55. There is no indication that the last 18 months of the pandemic moving through this country has in any way reduced rates of military effectiveness, created a significant loss of personnel or readiness, or in any way affected DoD's ability to perform its missions.

56. Indeed, medical evidence shows that the overwhelming majority of DoD service members, including the Plaintiff class i.e., a physically fit cohort under the age of 40, have little to fear from this virus.[4]

---

[4] https://www.statista.com/statistics/1191568/reported-deaths-from-covid-by-age-us/ Last accessed Sep. 21, 2021

57.     In short, Defendants have no compelling reason to preclude injunctive relief. An injunction at this point of the litigation will, instead, confirm the value of having the government follow its own regulations and laws, as well as protect the interests of servicemembers who literally have no other avenue to follow in dealing with patently illegal orders.

**E.  Enjoining Defendants Would Not Be Contrary to Public Interest**

58.     "The right to bodily integrity and the importance of complying with legal requirements, even in the face of requirements that may potentially be inconvenient or burdensome, are among the highest public policy concerns one could articulate." *Doe*, 297 F.Supp 2d, at 134.

59.     The general public has an express interest in seeing the Federal government and its entities follow the law. This is particularly true when the law affects the bodily integrity of individuals in the service of their country, have voluntarily relinquished many of the protections available to their civilian counterparts.

60.     Defendants cannot assert any legitimate public interest in favor of their continuing with their vaccination program, particularly since the FDA has licensed an alternative to the EUA vaccine.

61.     Accordingly, Plaintiffs have demonstrated all the requisite elements for this court to enter a preliminary injunction against Defendants.

**F.  Waiver of Bond**

62.     The court has the discretion to waive the security requirements of Fed.RCiv.P 65 or require only a nominal bond. *Pharmaceutical Soc'y of N.Y. v. Dep't of Soc. Serv.*, 50 F.3d 1168, 1174 (2nd Cir. 1995); *Crowley v. Local 82 Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers*, 679 F.2d 978, 999 (1st Cir. 1982), *rev'd on other*

*grounds*, 467 U.S. 526 (1984); *Temple University v. White,* 941 F.2d 201, 220 (3rd Cir. 1991).

63. Given that this preliminary injunction simply requires the Defendants to follow Federal law, rather than suffer some economic harm as a result of the limitation of their conduct, a bond would be inappropriate.

64. Moreover, Plaintiffs are seeking to vindicate their statutory protective rights and in this action they are represented pro bono by the attorneys before the Court. Under the circumstances, a bond waiver or a minimal bond is appropriate. *See, Natural Resources Defense Council, Inc. v. Morton*, 337 F.Supp. 167, 168–69 (D.D.C. 1971)(requiring the plaintiffs to post security in the case at bar would have the effect of denying the parties' ability to obtain judicial review); *accord, Environmental Defense Fund v. Corps of Engineers (Tennessee-Tombigbee)*, 331 F.Supp. 925 (D.D.C. 1971)(requiring a bond in the amount of $1.00); *West Virginia Highlands Conservancy v. Island Creek Coal Co.,* 441 F.2d 232 (4th Cir. 1971) (requiring a bond in the amount of $100.00).

65. Given the evidence that establishes Plaintiffs' claims, a high likelihood of success on the merits makes a bond waiver appropriate. *See, People of State of Cal. Ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985), *amended on other grounds,* 775 F.2d 998 (9th Cir. 1985).

## **CONCLUSION**

66. Plaintiffs are currently facing orders from their military superiors to submit to two vaccinations with an unlicensed, emergency use authorization product. The vaccination of Plaintiffs and those similarly situated to them are scheduled to be completed by the end of November of this year. If Plaintiffs are successful in litigating the merits of this case, they will have suffered the irreparable injury of inoculation with an unlicensed substance well before this

case moves through the judicial process. The only means of preventing such in irreparable injury is for this court to preliminarily enjoin Defendants from pursuing their vaccination program with an unlicensed vaccine.

67. Plaintiffs have demonstrated a substantial likelihood of success on the merits, irreparable injuries, that the balance is of interests weighs in their favor, and that an injunction is not adverse to public interest.

68. Accordingly, under this Circuit's precedents, Plaintiffs have demonstrated all the relevant factors weigh in favor of the court granting this motion.

Wherefore, Plaintiffs respectfully pray for the following relief:

a. An Order to all Defendants to stop inoculation of Plaintiffs and those similarly situated to them with the unlicensed Pfizer-BioNTech vaccine until a fully licensed alternative is available;

b. An order requiring Defendants to assess individual service members with preexisting COVID-19 exposure for serological immunity, and making them subject to exemption under Defendant DoD's regulations; and

c. An order an order prohibiting Defendants from retaliating against or in any other way professionally damaging Plaintiffs, and any other service member objecting to vaccination with the Pfizer-BioNTech EUA product.

d. For any other additional relief as this court deems equitable and proper.

Dated this 23rd day of the September 2021.

Respectfully submitted,

/s/
_____
Todd Callender, Esq.
Colorado Bar #XXXXX
Attorney For the Plaintiffs


/s/
_____
David Wilson
Colorado Bar # XXXXXXX
Attorney for the Plaintiffs


/s/
_____
John J. Michels
Attorney for the Plaintiffs
(Admission Pending)


/s/
_____
Dale Saran, Esq.
Attorney for the Plaintiffs